JAMESTOWN GAS COMPANY, a corporation, Appellant, v. T. J. AHEARN, Respondent.

(188 N. W. 169.)

**Corporations — in suit for conversion, held defendant might show under general denial that he disbursed moneys in accordance with direction of officers of plaintiff corporation.**

> In an action for the conversion of money, where the complaint alleges that the defendant wrongfully and fraudently converted money which he had received while acting as manager for the plaintiff (a corporation), the defendant may show, under a general denial, that he properly disbursed such moneys in accordance with the directions of the officers of the plaintiff corporation.

Opinion filed April 12, 1922. Rehearing denied May 5, 1922.

From a judgment of the District court of Stutsman county, *Nuessle,* J., plaintiff appeals.

Affirmed.

*C. S. Buck,* for appellant.

That justification should be pleaded is laid down as a rule in 31 Cyc. p. 215; and 38 Cyc. p. 2075. McClaren v. Cramer, 26 N. D. p. 244.

"A settlement of the cause of action pleaded in the complaint cannot be proved under a general denial. The fact of such settlement presents an affirmative defense which must be specifically averred. That was not done in the answer; for the reason is not properly before us for

consideration. Plaintiff objected to its admission in evidence on the express ground that it had not been pleaded." Mitchell v. Land Co., 19 N. D. 736.

*Divet, Holt, Frame* and *Throp* and *Harry E. Rittgers,* for respondent.

"In an action for the conversion of moneys collected defendant was allowed to show, without specially pleading it, that an agreement of agency existed between the parties by which the defendant was entitled to retain the money." Bowers on Conversion, § 531, p. 388; Wilder v. Co. 38 N. Y. Supp. 75; Phoenix etc. Co. v. Walrath, (Wis.) 10 N. W. 151; See also Bowers on Conversion, §§ 532 and 533.

"It is manifest that any plea alleging matter of justification or excuse (as a license, from the plaintiff—and authority derived from the law, etc.) is equivalent to the plea of not guilty since it must involve a denial of the conversion. * * * A conversion is wrong and cannot be justified. Where the appropriation is rightful there is no conversion; therefore, a plea showing that fact directly contravenes the complaint and is not confession and avoidance or in justification." Bowers on Conversion, § 534, pp. 389, 390; Nichols v. Co. (Minn.) 73 N. W. 415; Searcy v. State 93 Ind. 556; Stewart v. Mills, 18 Fla. 57; Leary v. Moran, 156, Ind. 560; Tum Inden v. Jurgens, 32 Misc. (N. Y.) 660; Cleveland v. R. R. Co., 58 N. E. 559; Gould on Pleading, § 57; Miller v. Knapp, (Pa.) 19 Atl. 555.

"We think it is well established that, under a general denial, * * * the conversion of the goods is put in issue and the defendant may introduce any and all evidence which goes to show that there was no conversion; and we think the defendant may show under such denial that the taking of the goods was with the plaintiff's consent and in pursuance of an agreement between the parties." Bowers on Conversion, § 535; Haynes v. Coal Co. (Ida.) 81 Pac. 114.

"In trover a valid authority for appropriation or destruction of the property involved may be proven under the general issue and in bar of the action." Bowers on Conversion, § 541; 38 Cyc. 2075 and cases cited.

"In trover not guilty puts in issue every matter which might be pleaded in bar except a release." Ryan v. Young, (Ala.) 41 So. 954; Barrett v. City (Ala.) 30 So. 36.

"A general denial admits any evidence going to controvert the facts which plaintiff is bound to establish." Abbott's Tr. Ev. (3rd ed.) 1677; Gandy v. Cowart (Ala.) 50 So. 355; Ency. Pleading and Practice, Vol.

21, p. 1096; Miller v. Knapp, (Penn.) 19 Atl. 555.

"The burden is on plaintiff in an action charging conversion to prove the act of conversion by showing a wrongful disposition or a wrongful withholding of the property. * * * To maintain the action some wrongful act on the part of the appellant must be shown." Taugher v. Co. 129 N. W. 747, (N. D.); McClellan v. Nicholson, 24 Minn. 176; Nichols v. Co. (Minn.) 73 N. W. 415; Drew v. Spaulding, 45 N. W. 472.

CHRISTIANSON, J. This action was brought to recover the sum of $654.25, which the plaintiff alleges that the defendant received, while employed as its manager between October 1, 1914, and June 1, 1919, and thereafter took and converted to his own use. The answer contains a general denial and two counterclaims—one counterclaim being for $106.62, which it is alleged that the plaintiff owes to the defendant by reason of overtime or labor performed by him, outside of the class of work which he was employed to perform during the year 1918; the second counterclaim is for a note in the sum of $636.94, executed and delivered by the plaintiff company to the defendant, on May 1, 1916. No objection was made to these counterclaims; and it was stated, upon oral argument, that there was an understanding between counsel that these counterclaims might be interposed and tried in this action so that the entire controversy between the parties might be determined.

The evidence shows that the plaintiff is a utility corporation which, during all the time involved in this controversy, was engaged in manufacturing and furnishing gas to consumers in the city of Jamestown. The defendant, Ahearn, prior to 1911 lived in Iowa. He was, however, a stockholder in the plaintiff corporation and was related to some of the other stockholders, nearly all of whom resided at Jamestown. In March 1911, the gas plant was injured by an explosion, and defendant, Ahearn, was requested by the officers of the plaintiff corporation to come to Jamestown to assist in repairing the plant. He came to Jamestown as requested and worked for the company for a period of some six months, for which he claims it was agreed that he was to receive a salary of $75 per month, or a total of $450 for the services he then performed. He claims that he received only $75 and that the company owed him $375 for the service so performed. In April, 1914, Ahearn returned and was again employed to perform work for the company as general utility man,

and later in that year he became general manager of the corporation, at a salary of $75 per month, which salary was gradually increased until, in 1919, he was receiving a salary of $200 per month.

Upon the trial of the action it was admitted that $105 of the amount which the complaint charged the defendant with having converted had been properly applied by him on a debt owing to him by the plaintiff company; also that an error of $7 had been made in the calculation and that the sum of $542.25, represented the actual amount claimed by the gas company to have been converted by the defendant. It was also admitted that the note pleaded as a counterclaim had been executed and delivered and that it had never been paid. Upon presentation of defendant's case, he was permitted to testify, over objection, that, at a meeting of the stockholders and the officers of the company, held on May 8, 1916, it was agreed that a number of unsecured claims outstanding against the plaintiff company, including the balance due the defendant for the services performed in 1911, in the sum of $375, and $105 due him on his salary in 1914, should be paid off as fast as possible out of moneys received by the gas company in course of its business.

The defendant also testified that, during 1917 and 1918, owing to the scarcity of men, he found it necessary to perform a great deal of common or menial labor such as shoveling coal, digging and filling ditches, cleaning generators, and work of that kind; that he performed this work in the evenings, after he had worked the regular hours at his duties as general manager, and on holidays; that the amount claimed for, and reasonable value of, such services were as follows: For the year 1917, $128, for the year 1918, $106.62; that the officers of the gas company knew that he performed such services, and expected to be remunerated therefor; that at the annual meeting of stockholders held in 1918, at which the officers of the gas company were present, he informed them that he desired to return to Iowa; that the stockholders and officers insisted on his remaining and continuing in the service of the gas company; that he thereupon informed them all that he would stay only on the condition that he was paid for the extra work he had performed during the years 1917 and 1918; and that it was fully understood at that time that he would continue in the service of the gas company only on the condition that he was paid for the extra work performed in 1917 and 1918.

The undisputed evidence is to the effect that the gas company had paid the defendant only $75 for the services rendered in 1911, and that it owed him a balance of $375 for such services. The evidence is, also,

to the effect that the defendant had the right and was fully authorized to employ men to perform menial labor, such as to shovel coal, dig and fill ditches, and to pay them for such labor out of funds in his hands belonging to the gas company, without consulting any of the officers of the company. The plaintiff contends, however, that the defendant should not have been permitted to introduce any evidence relating to the balance due on the 1911 salary, or the amount claimed to be owing for extra labor performed in 1917 and 1918, for the reason that these matters were not specially pleaded. In other words, it is contended that the evidence relating to the balance due on the 1911 salary, and the amounts claimed owing for extra work performed in 1917 and 1918 was not admissible under a general denial. In our opinion this contention cannot be sustained. The complaint charges the defendant with having unlawfully and fraudulently taken and converted to his own use certain moneys belonging to the plaintiff, which had come into his hands and under his control as manager of the plaintiff company.

The defendant, by his general denial, put in issue all the material averments of the complaint. Under the issues thus formed the plaintiff had the burden of proving that the defendant had converted to his own use the moneys which it claimed that he had converted, and the defendant, under his general denial, might properly introduce any evidence which had a logical tendency to disprove any fact which the plaintiff must establish, in order to prevail in his action. Pomeroy, Code Remedies, (3d ed.) p. 731. This rule is peculiarly applicable in actions for conversion. See Pomeroy's Code Remedies (3d ed.) p. 721.

"Under a general denial in the same action, or a specific denial of the conversion any facts may be proved in defense which go to show that there was no conversion." Pomeroy's Code Remedies (3d ed.) p. 746.

The Cyclopedia of Law and Procedure (38 Cyc. 2075) says:

"All defenses are admissible under the general issue, except matters of confession and avoidance; and defendant having tendered such an issue, may offer evidence of any fact which tends to negative either the act of conversion, the wrongfulness alleged, plaintiff's ownership, or his right of possession.

The evidence of which plaintiff complains tended to show that defendant had not converted the money, but had disbursed the same in accordance with the directions of the officers of the plaintiff corporation. If this was true, of course the money had not been converted as alleged in the complaint. A situation quite analogous to the one presented here was

considered by this court in Heiszler v. Beddow, 23 N. D. 34, 135 N. W. 660. The holding of the court in that case is stated in paragraph one of the syllabus thus:

"Under a general denial in an action for the conversion of money alleged to have been given to the defendant to be applied in payment of a debt to a third pary, defendant may put the plaintiff to proof of the allegations of his complaint, and may himself show that the money was really received in payment of a debt due to him from the plaintiff. Such evidence, however, may not be introduced merely for the purpose of proving a counterclaim, or obtaining an affirmative judgment."

This disposes of all assignments of error argued on this appeal. It follows from what has been said that the judgment appealed from must be affirmed.

It is so ordered.

GRACE, C. J., and ROBINSON, BIRDZELL, and BRONSON, JJ., concur.